OPINION
{¶ 1} Defendant-appellant, Arnett J. Reveles, appeals his felonious assault conviction in the Franklin County Court of Common Pleas. Appellant's arrest and conviction arose out of events occurring in the early morning hours of January 1, 2002, when an argument between appellant and Nikaija Anderson turned violent and resulted in extensive injury to Anderson. As a result of her injuries, Anderson lost at least one tooth and received 16 stitches in her arm.
¶ 2 Anderson testified that appellant, who was her boyfriend at the time, had access to her apartment, and arrived that night upset because the couple had not spent New Year's Eve together. She stated appellant began to hit her with his fists and then with a vacuum cleaner, and threw various objects at Anderson while she was defensively curled up on the floor. She testified that she told appellant: " `Junior, you need to stop. You're going to kill me[,]' " and that appellant answered: " `That's good. You need to die.' " (Tr. at 24.) Anderson testified that she fled her apartment and fell down some steps, landing on her side and shoulder. She further stated that, as she lay at the bottom of the steps, appellant caught up with her and kicked her in the face and body, knocking out two teeth. She stated that when neighbors heard her screaming and came on the scene, appellant ran out of the building.
¶ 3 Appellant testified that his argument with Anderson that night escalated into a wrestling match, but that he did not hit her until after she bit him on the shoulder. He gave the following account of how Anderson was injured:
 So then she had grabbed my arm after I had threw a punch and then she pulled my arm so I pushed her down. I had broken a glass * * * while we were wrestling around * * *. So when I had pushed her off me, she fell to the ground. And all the glass that was broken was on that floor and that's how her hand got cut.
* * *
 * * * When she was on the ground, she got up. She stood there for a second. The door was unlocked. She opened the door and just ran right out and then it's the hallway where we live at.
 So when she ran out, she screamed for help. And it's like two doors in our hallway. So when she went through that door, that's when I had stepped out in the doorway. I had seen her leaving out the door. So then once I got to that part of the door, she was at the end of the steps and then all I seen was her just fly straight off the steps. And then I just heard a loud boom. And then I came down and she was on the floor crying. And I just ran right out.
(Tr. at 63-64.)
 {¶ 4} Appellant now assigns the following as error:
 FIRST ASSIGNMENT OF ERROR: The court erroneously overruled appellant's requests (1) for a continuance to secure the testimony of an expert witness, and (2) for a brief delay in the trial in order to permit the testimony of the expert witness he was nonetheless able to obtain.
 SECOND ASSIGNMENT OF ERROR: The court erred in excluding the testimony of a defense witness without properly exploring less severe remedies for sanctions for defense counsel's failure to include that individual on the list of potential witnesses.
 THIRD ASSIGNMENT OF ERROR: The extent the court's refusal to allow additional time for a defense expert to appear and testify may have been intended as a sanction for failure to provide her name in discovery, the court erred in excluding her testimony without properly exploring less severe remedies or sanctions.
 FOURTH ASSIGNMENT OF ERROR: Cumulative error denied appellant his constitutional right to mount a defense.
 FIFTH ASSIGNMENT OF ERROR: Appellant's conviction was not supported by the evidence and was against the manifest weight of the evidence in that the state failed to prove beyond a reasonable doubt that appellant knowingly cause [sic] serious physical harm to the prosecuting witness.
 ¶ 5 We first address appellant's fifth assignment of error, which charges that his conviction was not supported by sufficient evidence, the manifest weight of which did not demonstrate his guilt beyond a reasonable doubt. The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * *
 ¶ 6 See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80.
¶ 7 In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
¶ 8 Appellant was convicted on one count of felonious assault, in violation of R.C. 2903.11, which reads, in part: "(A) No person shall knowingly: * * * (1) Cause serious physical harm to another[.]" In proving all the elements of felonious assault, the state must demonstrate that the defendant knowingly caused or attempted to cause physical harm to another. R.C. 2903.11(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Thus, "[i]f the result is probable, the person acts `knowingly'; if it is not probable but only possible, the person acts `recklessly' if he chooses to ignore the risk." State v. Edwards (1992), 83 Ohio App.3d 357, 361.
¶ 9 Appellant claims that the state's evidence failed to show he knowingly caused physical harm to Anderson because her injuries were minor and were not directly caused by appellant, but, instead, resulted from a physical altercation in which both Anderson and appellant participated. Specifically, appellant points to his own account of the events of that night, and maintains that Anderson was cut when she encountered broken glass on the floor — glass that was broken inadvertently when appellant and Anderson were "wrestling." He also claims that he did not kick appellant in the mouth and claims she lost her teeth when she fell.
¶ 10 The other view of the events of that night, which the evidence supported and which the jury reasonably relied upon, was that the glass was broken when appellant was throwing things at Anderson, that appellant's actions created the risk that Anderson would be injured by broken glass, and that her injury, in addition to the fear for her life expressed in Anderson's statement that appellant "need[ed] to stop" because he was "going to kill" her, caused Anderson to run out of the apartment and fall down the steps. Thus, even if the jury discounted Anderson's claim that she lost her teeth because appellant kicked her in the mouth, the jury still could have found that appellant committed felonious assault. Because appellant's conviction is supported by overwhelming evidence that appellant knowingly caused Anderson physical harm, we overrule appellant's fifth assignment of error.
¶ 11 Appellant's first assignment of error deals with his attempt to present a dentist's expert opinion on the cause of the injury to Anderson's teeth. Regarding this issue, the following discussion occurred between appellant's counsel and the trial court:
 [DEFENSE COUNSEL]: Your Honor, the preliminary matter is, the Defense is requesting a continuance. The request is based on that I seek out a dentist or other expert witness to offer an opinion on the likelihood of the resultant injury being consistent or inconsistent with the alleged act of assault.
 And the operative facts in this case involve an allegation that my client kicked the teeth of Nikaija Anderson while she was laying on the ground and has recently come to my attention that initially she lost one tooth and a day or two or three later lost a second tooth. These teeth happen to be pretty much dead center on the bottom row of teeth.
 And the question as we were debating it last evening between my client and myself was whether or not an expert witness would be of value to us and to the court and to the jury in terms of appreciating the relationship between the act — the relationship between the injury and whether or not there is a consistency or inconsistency between those events.
* * *
 THE COURT: First, I would like to put a few things on the record. When was it originally set for trial?
 [DEFENSE COUNSEL]: Your Honor, I believe it was set last Monday was the original date, the 4th. And the victim was in South Carolina.
 THE COURT: Okay. The case was set for last week. The victim who is living out of state was not available. There was an agreement by all parties to continue the case until yesterday. We had a meeting. I had a meeting with counsel yesterday. And it was the belief of the prosecutor that he had another case that was pending in another courtroom and that would go to trial. It was my suggestion that we try to figure out whether he is, in fact, going to be engaged counsel in that case and let's see what would happen with that trial. And Defense was totally in agreement with that.
 Then this morning, we met and it turns out the prosecutor is not in trial. However, because of the late notice of that, the police officers were released. So there was a discussion whether to continue this case for a couple days to try to get the officers or to make an effort to try to get the officers back. And everybody was in agreement with that.
 Around about 2:00 o'clock there was another effort made to try to locate the officers, which was done. The officers have been located and had discussions with Defense counsel about that and though he has been in contact with his client all day, been in the holding cell all day, I think — his client. Now we are quarter of 3:00, the jurors are outside of the courtroom ready to come in here and this is the first time anybody said anything about getting a dentist.
 Now, based upon the information you have given me, I am not going to provide any funds to hire a dentist. So with that in mind, if he is not able to provide — and plus, it's awfully late to start talking about witnesses, since witness disclosure is long gone. I'm not going to provide a dentist. We will go forward with the trial as is.
(Tr. at 3-5.)
 {¶ 12} Despite these remarks, the trial court did grant appellant leave to call a dentist to testify, so long as the dentist could appear that same day; however, the dentist was not available that day. Appellant did not object either to the court's denial of his request for court appointment of the expert or to the court's denial of his request for a continuance. Nor did appellant proffer the testimony the dentist would have given.
 {¶ 13} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." State v. Unger (1981), 67 Ohio St.2d 65, syllabus. An appellate court must not reverse the denial of a continuance absent an abuse of that discretion. Id. at 67. In order to successfully claim that a trial court abused its discretion in denying a continuance, appellant must demonstrate actual prejudice. In other words, under these facts, appellant must show that, had the trial court granted a continuance in order to permit appellant's expert to testify, the outcome of the trial would have been different.
 {¶ 14} Given our disposition of appellant's fifth assignment of error, we cannot say that the appearance of the dentist would have changed the outcome of appellant's trial, since there was sufficient evidence of his guilt even if Anderson's mouth injuries were not caused by appellant kicking her. We therefore overrule appellant's first assignment of error.
 {¶ 15} By his second and third assignments of error, appellant argues that the exclusion of the dentist's testimony and the court's refusal to permit the appearance of appellant's sister, Charlene Dawes, both were sanctions for appellant's failure to identify these witnesses during discovery, and that these sanctions were overly harsh, serving to deny appellant his constitutional right to present a defense. These assignments of error will be addressed together.
 {¶ 16} Crim.R. 16(E)(3) gives wide authority to the trial court in fashioning a remedy for a discovery violation. "It is readily apparent that under this rule, the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so at its option. Alternatively, the court may order the noncomplying party to disclose the material, grant a continuance in the case, or make such other order as it deems just under the circumstances. Accordingly, our inquiry is limited to a determination of whether the trial court's action in this case constituted an abuse of discretion." State v. Parson (1983),6 Ohio St.3d 442, 445. When determining the appropriate sanction for a discovery rule violation, the trial court is required to impose the least severe sanction that is consistent with the purpose of the rules of discovery. Lakewood v. Papadelis (1987), 32 Ohio St.3d 1. Nevertheless, exclusion of evidence is only impermissible when it acts to completely deny a defendant his constitutional right to present a defense. Id.
 {¶ 17} Although appellant argues that the trial court's actions, with regard to both the dentist's and his sister's appearance, served to deny him his constitutional right to present a defense, there was no proffer from counsel as to what the testimony of either of these witnesses would have been. Accordingly, appellant has not demonstrated prejudice from either of the court's rulings.
 {¶ 18} Moreover, even if the trial court should have granted a continuance in order to secure the dentist's appearance and should have permitted appellant's sister's testimony, appellant cannot show prejudice because the evidence before the jury, taken in its entirety, overwhelmingly supported appellant's conviction for felonious assault, as discussed above. Under these circumstances, we cannot say the trial court acted arbitrarily, unreasonably or unconscionably in its rulings regarding these witnesses. Appellant's second and third assignments of error are overruled.
 {¶ 19} Appellant's fourth assignment of error claims that the cumulative effect of the first three assignments of error assigned resulted in the denial of appellant's right to mount a defense. Because we found no merit to any of appellant's claimed errors, this argument must fail. We overrule appellant's fourth assignment of error.
 {¶ 20} Appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and LAZARUS, J., concur.